IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | CRIMINAL NO. 3:13-cr-00207-JRS |
| ) | |
| RAHIM SABADIA, ) | |
| ) | |
| Defendant. ) | |

# GOVERNMENT'S POSITION WITH RESPECT TO SENTENCING FACTORS

The United States of America, by and through its attorneys, Dana J. Boente, Acting United States Attorney for the Eastern District of Virginia, and Brian R. Hood, Assistant United States Attorney, hereby submits its position with respect to the sentencing factors for the defendant, RAHIM SABADIA. The United States has no objection to the Presentence Investigation Report (PSR), which establishes a guideline range of 0-6 months. For the reasons set forth below, the Government recommends that the Court impose a sentence of three years' probation and a $25,000 fine.

## I. Case Summary

The defendant's basic role in the offense is set forth in the Statement of Facts, which is also reflected in the Offense Conduct section of the PSR. (*See* PSR, ¶ 7). Additional pertinent facts are discussed below in Paragraph III.A (Nature and Circumstances of the Offense).

1

## II. Sentencing Analysis Since United States v. Booker

In *United States v. Booker,* 543 U.S. 220 (2005), the Supreme Court held that mandatory imposition of sentences derived from the Federal Sentencing Guidelines violated a defendant's Sixth Amendment right to a jury trial. The Court further held that district courts, while not bound to apply the Guidelines, must consult them and take them into account when sentencing, as well as the factors listed in 18 U.S.C. §3553. *Id.* at 265.

In *United States v. Moreland*, 437 F.3d 424 (4th Cir. 2006), the Fourth Circuit described an analytical approach district courts must adhere to in determining an appropriate sentence. The *Moreland* approach requires that a district court: 1) correctly determine the applicable guideline range; 2) assess whether the guideline range satisfies the § 3553(a) factors; 3) consider any appropriate departures under the Guidelines and the case law that might also be necessary; and, finally, 4) consider, and explain, a variance to a non-guideline sentence if such a variance is still required to satisfy the factors in § 3553(a). *Moreland*, 437 F.3d at 432.

Title 18, United States Code, Section 3553(a) states that, in determining a particular sentence to be imposed, the Court shall consider the following factors:

(1) the nature and circumstances of the offense, and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes by the defendant; and

(D) to provide the defendant with needed educational or vocational training; medical care, or other correctional treatment in the most effective manner.

### III. Factors Under 18 U.S.C. §3553(a)(1)

A. <u>Nature and Circumstances of the Offense</u>

As documented throughout the Statement of Facts and PSR, the defendant formed Sabtech Industries in 1984. Sabtech became an important contractor for a variety of military defense systems. For several contracts Sabtech was a government-designated "sole source" contractor, meaning that Sabtech was the only source of supply for the contracted-for products or services. Included among these sole source contracts was one related to the U.S. Navy's Aegis Ballistic Missile Defense System ("Aegis BMD"). Aegis BMD is the primary sea-based component of the U.S. missile defense system. The system is deployed on a number of U.S. Navy ships, which are stationed around the globe in positions where they can intercept and destroy ballistic missiles in flight that are determined to be a threat to the United States or its allies.

In 2010, the Defense Security Service terminated Sabadia's security clearance, and as a result Sabtech lost its facility security clearance. Given Sabtech's sole-source contracts in support of the Aegis BMD and other military

systems, it should be apparent that the termination of Sabadia's and Sabtech's security clearances was a decision not made lightly by government officials.

In 2011, the Federal Bureau of Investigation learned that Sabadia had formed and was controlling a new company, Primary Tech Systems (PTS), through which Sabadia intended to bid on government contracts that Sabtech had lost following the termination of its security clearance. An undercover investigation commenced, and in recorded conversations and telephone calls it became apparent that Sabadia was no mere advisor to PTS, but in fact was very much in control of the company and its direction.

The June 16, 2011 telephone conversation that Sabadia had with a Navy procurement official, which provides the basis for the Criminal Information in this case, was designed, in part, to give the defendant an opportunity to come clean and clarify his role at PTS. Instead he claimed that he was a mere advisor, denying what investigators knew to be the case, *i.e.,* that, notwithstanding his occasional exculpatory statements to PTS officers about his role as an advisor, Sabadia was very much in control of PTS. It is significant to note that Navy procurement officials would not have entered into actual contract negotiations with PTS (as opposed to the appearance of negotiating while assisting an FBI undercover investigation) with the knowledge that Sabadia was controlling PTS.

As this was an undercover investigation, determining the intended loss amount for sentencing purposes is subject to several widely-varied approaches. One

could assign values of: 1) zero, based solely on the defendant's June 16, 2011 statement; 2) $8,010.23, based on a contract for training materials that PTS successfully fulfilled with the Navy in July 2011 (which Navy procurement officials authorized in support of the FBI's undercover investigation); or 3) $10,000,000, based on the value of the engineering services contract that Sabtech lost and which PTS, under Sabadia's direction, bid on in November 2011.

Using the $10,000,000 figure to calculate an incarceration guideline range would overstate the nature of SABADIA's actual crime, particularly given the fact that SABADIA's apparent intention was to continue satisfying contracts with the U.S. Government, albeit through an illegal shell company. But the nature of the offense and the defendant's economic means call for punishment that exceeds the mere wrist-slap of probation alone.

During plea negotiations it was the government's position, which the defendant ultimately agreed-to, that the $10,000,000 figure was appropriate for determining a suitable fine in lieu of incarceration. Using $10,000,000 as the fraud amount in U.S.S.G. § 2B1.1(b)(1), the resulting Offense Level Total is 23. The precise Specific Offense Characteristic enhancement derived is plus-20 for a loss amount exceeding $7,000,000 but less than $20,000,000.[1] Sentencing Guideline Section 5E1.2 provides that the guideline range for a fine for Offense Level 23 is

---

[1] This 20-point enhancement would be added to the Base Offense Level of 6, yielding an Adjusted Offense Level of 26, which is reduced to an Offense Level Total of 23 with the 3-point downward adjustment for acceptance of responsibility.

$10,000 to $100,000. The Plea Agreement's agreed-to fine of $25,000 falls approximately in the same place in the fine guideline range as the $10,000,000 figure falls between $7,000,000 and $20,000,000 in the §2B1.1 loss table.

    B.    <u>History and Characteristics of the Defendant</u>

    (1) *Criminal History*

The defendant's criminal history includes one prior felony conviction in 1985 in the United States District Court for the Central District of Illinois for the sale of illegal listening devices. A federal undercover investigation determined that the defendant, who was then running a company called Sabadia Export Corporation (SEC), had sold during a five-month period some 65 electronic devices that were designed to surreptitiously intercept oral and wire communications. During a meeting with undercover agents the defendant admitted that it was illegal to both sell and use such devices. Following his arrest, Sabadia pleaded guilty and received a sentence of probation and a $1,500 fine. What is most telling about this prior conviction is that it demonstrates that Sabadia's current offense is not a complete aberration: on more than one occasion the defendant has willfully violated criminal law in pursuit of his own financial gain.

    (2) *Personal History and Characteristics*

Like many people, the defendant appears to be a complicated and multi-layered individual. He escaped the oppressive conditions of South African Apartheid, traveled to Europe and the United States, and with only a modest

amount of college or professional education went on to form and lead several successful corporations. As reflected in the PSR ¶¶ 52-59, the defendant has enjoyed a level of financial prosperity that most people can only dream of achieving. Judging from the PSR and the Defendant's Sentencing Position, he has also been generous to others with his time and money. His thoughtful personal statement to the U.S. Probation Officer, and his family's "Constitution" and "Strategic Plan" are indeed unusual. All of this describes one aspect of a personal history that is truly commendable and which must be seen only rarely by a court in a criminal case.

But in addition to that laudable side of the defendant's personal history, the government's investigation revealed that the defendant is a person of determination who is unafraid to violate the law for personal gain. The undercover recordings in the case made clear that Sabadia was in charge of PTS and its officers—who he had handpicked—and that he would use PTS to continue profiting from government military contracts that required the security clearance he no longer held.

### IV.    Factors Under 18 U.S.C. §3553(a)(2)

#### A.    Seriousness of the Offense

The government spends billions of dollars every year in defense procurement contracts. These contracts contain many provisions, including but not limited to security clearance requirements, to guard against fraud, ensure that the government receives what it has bargained for, and protect our national security. With so much at stake in the way of lives and treasure, the defense procurement

7

system can only function properly if prospective contractors are honest during negotiations with government officials. It is simply intolerable for contractors to knowingly make materially false representations during the procurement process. There should be no dispute that the defendant's conduct is serious, and should be sanctioned appropriately with probation and the hefty, agreed-to fine.

      B.     <u>Need to Deter Future Criminal Conduct</u>

Sentencing SABADIA to three years of probation and a $25,000 fine will hopefully provide some measure of deterrence for the defendant and others involved in defense procurement contracting with the U.S. Government.

      C.     <u>Need to Protect the Public from the Defendant's Future Criminal Conduct</u>

To the extent that protection of the public from the defendant's future criminal conduct is required, a sentence of three years' probation and a $25,000 fine should be adequate.

      D.     <u>Need to Provide Needed Treatment to Defendant</u>

The United States is not aware of any specific training or treatment required by the defendant.

**V.    Conclusion**

For the foregoing reasons, the United States respectfully asks this Court to sentence RAHIM SABADIA to three years' probation and a $25,000 fine.

Respectfully submitted,

DANA J. BOENTE
ACTING UNITED STATES ATTORNEY

By:   */s/  Brian R. Hood*
     Brian R. Hood
     Assistant United States Attorney
     600 East Main Street, Suite 1800
     Richmond, Virginia 23219
     Phone (804) 819-5508
     Brian.hood@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing Position of the United States with Respect to Sentencing was sent on this day, **March 17, 2014**, by electronic mail to the following:

>Paul W. Butler, Esquire
>Jonah E. McCarthy, Esquire
>Jeffrey M. King, Esquire
>Robert S. Strauss Building
>1333 New Hampshire Avenue, N.W.
>Washington, DC 20036-1564
>pbutler@akingump.com
>jmccarthy@akingump.com
>jking@akingump.com

>*and*

>Blakely D. Brown
>Senior United States Probation Officer
>701 East Broad Street, Suite 1150
>Richmond, Virginia 23219
>Blake_Brown@vaep.uscourts.gov

>By:    /s/ *Brian R. Hood*
>Brian R. Hood
>Assistant United States Attorney
>600 East Main Street, Suite 1800
>Richmond, Virginia 23219
>Phone (804) 819-5508
>Brian.hood@usdoj.gov